■ SIDNEY H. GINSBERG et al., Respondents, v NORTH RIVER INSURANCE COMPANY, Appellant, and NEW YORK PROPERTY INSURANCE UNDERWRITING ASSOCIATION, Respondent, et al., Defendant.—In a consolidated action on a policy of fire insurance, defendant North River Insurance Company (North River) appeals from so much of an order of the Supreme Court, Queens County, dated May 31, 1978, as granted the motion of defendant New York Property Insurance Underwriting Association (New York Property) to dismiss the complaint as against it and directed an assessment of damages. Order modified, on the law, by deleting from the first decretal paragraph thereof the words "in all respects", and substituting therefor the words "solely on the ground of the Statute of Limitations" and by adding to the fifth decretal paragraph thereof a provision that North River's liability shall be limited to one half of the plaintiffs' loss. As so modified, order affirmed insofar as appealed from, with one bill of $50 costs and disbursements payable jointly to respondents appearing separately and filing separate briefs. Plaintiffs are the owners of certain commercial property situated in the Long Island City area of the Borough of Queens. In May, 1974 defendant New York Property, upon payment of a deposit by plaintiffs, issued a tentative binder of "high risk" fire insurance in the amount of $375,000 on the property, which was then unoccupied. The binder, by its terms, was to "expire if payment of total premium is not made within 30 days after Notice of Approval and Premium Due is issued". The "Notice of Approval and Balance Due", which was mailed to plaintiffs on July 29, 1974, specified the due date as August 28, 1974 and indicated that coverage would be canceled if the premium payment was not received by that date. The premium was never paid. Prior to the due date, the property was rented and plaintiffs succeeded in obtaining fire insurance for the property on the voluntary market. The new policy, issued by defendant North River, provided the same liability limit as the New York Property Insurance binder, but at a significantly lower premium. In addition, it included rental insurance not provided by the New York Property binder. It is conceded that plaintiffs never notified New York Property that they were canceling the high risk coverage. On September 12 and October 20, 1974 the property was severely damaged by two separate fires. Plaintiffs filed notices of loss with defendant North River. New York Property was not notified directly of the loss. However, by a notice of cancellation dated October 4, 1974, and effective November 8, 1974, New York Property notified the plaintiffs that the policy was being canceled because of "Physical changes in the property insured". When settlement negotiations with North River reached an impasse, plain-

tiffs brought an action on the North River policy. North River, as a partial defense, alleged that the New York Property policy was in effect at the time the fires occurred and that, in accordance with the terms of the North River policy, any liability of North River would therefore be limited to one half of the total recovery to which plaintiff was entitled. In August, 1975, North River served a third-party summons and complaint on New York Property, claiming that the two insurance companies were jointly liable for any property damage suffered by plaintiffs. The third-party complaint was dismissed on the ground that New York Property was not a party who "is or may be liable to" North River (see CPLR 1007), since New York Property's liability, if any, was directly to plaintiffs. At that time, the court did not decide whether the New York Property binder was in effect when the loss occurred. As a consequence of that decision, plaintiffs, in June, 1976, brought a separate action against New York Property. The two actions were thereafter consolidated. New York Property then moved to dismiss the complaint as against it. Special Term granted the motion on the grounds that (1) the New York Property coverage terminated on August 28, 1974 and was therefore not in effect when the fires occurred, and (2) the action was barred by the one-year Statute of Limitations contained in the standard policy (see *Char-Mo Investors v Market Ins. Co.,* 44 NY2d 793). North River appeals from the resulting order insofar as it was based on the conclusion that the New York Property binder was not in effect at the relevant times. As a consequence of that decision, North River would be liable for all of the property damage suffered by plaintiffs. The parties do not contest Special Term's holding that the action against New York Property is time-barred. We cannot agree with Special Term's conclusion that the New York Property coverage terminated on August 28, 1974. In the absence of a notice of cancellation by the insured, neither the plaintiffs' failure to pay premiums, nor their success in obtaining substitute coverage, effectively canceled the New York Property binder (see *Providence Washington Ins. Co. v Security Mut. Ins. Co.,* 35 NY2d 583). Nor was coverage terminated by the actions of the insurer, New York Property. We have previously held that notwithstanding the language of a binder, an insurer may only cancel a fire insurance binder by a 5- or 10-day written notice of cancellation, as provided in the standard policy (see *Silberzweig v New York Prop. Ins. Underwriting Assn.,* 59 AD2d 737). Here the only legally operative notice of cancellation was dated October 4, 1974, and effective November 8, 1974, after the losses had occurred. New York Property also refers to article 17-B of the Insurance Law, which provides that New York Property insurance shall be available only to persons who, despite "diligent effort", are unable to obtain insurance on the "normal insurance market" (Insurance Law, § 653, subd 1, par [a]). New York Property errs in asserting that, by virtue of the statutory language, the New York Property coverage terminated automatically once plaintiffs obtained insurance in the voluntary market. We are cognizant of the fact that the notice of cancellation requirement is designed to protect the insured (see *Providence Washington Ins. Co. v Security Mut. Ins. Co., supra)* and that our strict enforcement of the requirement in the instant case will work to the insured's detriment. We note, however, that plaintiffs' difficulties stem not from our interpretation of the notice rule, but from their own failure to protect their rights by commencing an action against New York Property in a timely manner. Gulotta, J. P., Shapiro, Cohalan and Margett, JJ., concur.